## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **Nabil T. Khoury, M.D.** | § | **Civil Complaint** |
| | § | **No. 19-4806** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Archana Thota, M.D.; Apollo** | § | |
| **Healthcare at Willowbrook, LLC;** | § | |
| **Willowbrook Med Properties, LLC;** | § | |
| **DOES 1-10, inclusive; and ROES 11-** | § | |
| **20, inclusive,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION <u>AND PERMANENT INJUNCTION</u>

Plaintiff by and through his undersigned counsel, and based upon knowledge, information, belief, and the results of their investigation to date, for their claims against Defendants, file this Original Complaint and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction against Defendant Archana Thota, and against Apollo Healthcare at Willowbrook, LLC ("Apollo") and Willowbrook Med Properties, LLC ("Willowbrook," together, "the Companies") nominal defendants, as follows:

-1-

## I. SUMMARY OF ACTION

1.      This lawsuit seeks to prosecute multiple claims for relief against Dr. Archana Thota for securities fraud and for fraud against the Plaintiff and against the Companies in which Plaintiff is a Member.

## II. JURISDICTION AND VENUE

2.      Plaintiff's Second Cause of Action arises under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and jurisdiction in this Court is therefore proper under Section 27 of the Exchange Act [15 U.S.C. § 78aa(a)] and 28 U.S.C. § 133 1.  Plaintiff's remaining Causes are closely related in fact and law to his Second, and this Court should therefore exercise supplemental jurisdiction over them under 28 U.S.C § 1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) & (b)(2) in that Dr. Thota resides in this District within the meaning of 28 U.S.C. § 1391(c), and a substantial part of the events or omissions giving rise to the claims complained of herein occurred within this District, respectively.  Venue in this District is also proper because claims arising under Section 10(b) of the Exchange Act  [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], promulgated thereunder, are subject to nationwide venue and service of process, and more specifically may be brought where "any act or transaction constituting the violation

occurred" or "in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." (15 U.S.C. § 78aa; <u>Peay v. Bellsouth Med. Assistance Plan</u>, 205 F.3d 1206, 1210 (10th Cir. 2000) (When nationwide service of process is authorized by the governing federal statute, "it becomes the statutory basis for personal jurisdiction, provided that due process is satisfied.")).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III. THE PARTIES

5.      Plaintiff Nabil Khoury, M.D. ("Plaintiff" or "Khoury") is an individual, who at all relevant times herein resided within this District.

6.      Defendant Archana Thota, M.D. ("Thota") is an individual, who, upon information and belief derived from conversations with her, resides in this District, within this jurisdiction and venue of this Court.  Defendant Thota may be served with process at 1736 Watersedge Drive, McKinney, TX 75070.

7.      Defendant Apollo Healthcare at Willowbrook, LLC ("Apollo") is, upon information and belief, a Texas limited liability company that is in part owned and controlled by Defendant Thota.  Plaintiff is also a member of Apollo. Apollo is a nominal defendant herein.   Defendant Apollo may be served with process at 6125 Luther Lane No. 309, Dallas, TX 75225.

8.      Defendant **Willowbrook Med Properties, LLC** ("Willowbrook") is, upon information and belief, a Texas limited liability company that is in part owned and controlled by Defendant Thota.  Plaintiff is also a member of Willowbrook.  Willowbrook is a nominal defendant herein.   Defendant Willowbrook may be served with process at 6125 Luther Lane No. 309, Dallas, TX 75225.

9.      The acts complained of herein occurred in the County of Harris, State of Texas.  The acts complained of herein occurred within the jurisdiction of this Court.

10.     Plaintiff is ignorant of the true names and capacities of the Defendants, whether individual, or otherwise, sued herein as DOES 1 through 10, inclusive.  Plaintiff therefore sues these defendants by fictitious names and will seek to amend his Complaint to show the true names when ascertained.  Plaintiff is informed and believes, and based thereon allege, that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings giving rise to Plaintiff's requested relief.

11.     Plaintiff is ignorant of the true names and capacities, whether corporate or otherwise, of defendants sued herein as ROES 11 through 20, inclusive.  Plaintiff therefore sues these defendants by fictitious names and will seek to amend his Complaint to show the true names when ascertained.  Plaintiff is

informed and believes, and based thereon allege, that each of the defendants designated herein as a ROE is legally responsible in some manner for the events and happenings giving rise to Plaintiff's requested relief.

12.     Each of the named Defendants and the ROE defendants herein were at all times herein mentioned the agent and/or employee of each of the other named or ROE co-defendants, and in doing the things hereinafter alleged, each defendant was acting in a managerial capacity and in the course and scope of such agency and/or employment with the permission and consent of said co-defendants and acted with the power to bind these defendants and each of them to the acts of said individuals, said acts having thereafter been ratified by these defendants, and each of them.

13.     Each allegation against a named Defendant herein applies equally to DOE and ROE defendants, as made appropriate by the context within which the allegation is made.

## IV. BACKGROUND FACTS

**A. <u>Who, How, and Where: Thota Lies to Plaintiff About the "Investment"</u>**

14.     In September of 2014, Dr. Thota made an investor presentation to Dr. Khoury and a group of other doctors, where she represented that she was starting a "premier" nursing facility that would  provide "resort-like" care for its patients. She offered him an investment into the nursing home, Apollo, of 1%  for each

$10,000 he invested in the business.  She also offered him investment in Willowbrook, of 1% for each $34,000 he invested.  Dr. Thota assured Dr. Khoury and the other doctors that both Apollo and Willowbrook were "low risk investments" and presented them as a "franchise type of investment" because, she assured him and other potential investors in a group meeting, she had already opened and operated multiple other successful nursing homes on a similar model— mentioning one in Dallas and one in Pasadena, Texas.  Dr. Khoury has just this year determined that each of those statements was false when made.  Within the last few months, Dr. Khoury spoke with one of Dr. Thota's other victims from one of the prior "successful" nursing homes and learned that she never once paid a distribution to that investor from operations of that nursing home.  Dr. Khoury had no reason at that time to suspect that these statements were false, since they were being made by a fellow medical doctor who purported to have successfully operated similar businesses.  Dr. Khoury therefore reasonably relied upon these false statements to enter into both of the proposed "investments."

15.    At no time did Dr. Thota provide Dr. Khoury with a prospectus, obtain proof from him that he was an accredited investor, or otherwise comply with either state or Federal securities laws.  At the meeting with Dr. Khoury and other potential investors in the fall of 2014, Dr. Thota did provide written information for both Apollo and Willowbrook, but demanded that these materials

be returned to her after Dr. Khoury agreed to invest, and has not provided those materials to Dr. Khoury or any other investor since then.

16.     Having obtained Dr. Khoury's interest in her proposed "luxury" nursing home, Dr. Thota proceeded to further entangle Dr. Khoury in her scheme.

17.     In October of 2014, shortly after the first meeting with Dr. Khoury and other potential investors, he signed two operating agreements—one for Apollo and one for Willowbrook.  Dr. Thota kept the originals, and Dr. Khoury has not seen either the original he signed or a copy of that original since that second meeting.  After signing both operating agreements, Dr. Khoury gave Dr. Thota two checks, one for $50,000 for the "investment" in Apollo of 5% ownership, and one for $68,000 for the "investment" in Willowbrook of 2% ownership.  A few weeks after taking the checks from Dr. Khoury, she convinced him to sign a personal guarantee for the nursing home's bank loan.

18.     In December of 2016, Dr. Thota convinced Dr. Khoury and other investors to sign a loan modification agreement with the bank.

19.     In January of 2019, Dr. Thota insisted that Plaintiff invest an additional $50,000 of his life savings into the "premier" nursing home as a "cash call."   She did this by sending him "minutes" of a purported meeting of the members that Dr. Khoury was not present for.  The purported "cash call" was for $10,000 per membership unit (1%), for a total of $50,000 she demanded from Dr.

Khoury on very short notice, admitting that it was needed to pay taxes. She threatened Dr. Khoury and the other investors, stating that, if he did not provide the requested funds his ownership interest would be diluted, with less ownership but the same liability to the bank on his personal guarantee. This was Dr. Khoury's first inkling that something was dreadfully wrong with his "investments" and shortly after sending the requested $50,000 he spoke with Dr. Thota to demand the return of the funds. She refused, stating "why are you worried, I will send your money back" and assured Dr. Khoury that she had raised "$1 million" with the cash call. Dr. Khoury has since learned that she had lied to him and that she had only raised $665,000. At that point, Dr. Khoury began a further investigation of Dr. Thota and her purported "investments" of Apollo and Willowbrook. Dr. Khoury met with Dr. Thota in May of 2019 where he raised all his concerns. Dr Khoury asked for a copy of the operating agreements he signed back in 2014, as well as financial records. She agreed she would provide these documents, but to date has not done so.

**B. The Scheme: Thota Refuses to Even Provide a Signed LLC Agreement**

20.     Having obtained his money and the use of his credit, Dr. Thota effectively disappeared. Since January of 2019, she repeatedly has refused to provide him with any verification that he in fact owns any share of either Apollo or

Willowbrook—despite repeated demand for the same, as recently as May of this year.

21.     Dr. Thota appointed herself as the "manager" of the nursing facility, and her tenure there has been nothing short of a disaster.  As Dr. Khoury learned after commencing his investigation this year, the "premier nursing facility" has been anything but.  Upon information and belief derived from conversations this year with other doctors and prior administrators and employees of the nursing home:

- Patients frequently were unsatisfied, complaining about the care.

- Patients frequently complained about the food quality.

- Administrators of the facility would "disappear" soon after they get appointed, with the longest lasting only 4 months.

- Critical bills (food services, phone companies, computer maintenance, lab services, and radiology services) were going chronically unpaid.

- Dr. Thota apparently also owns the pharmacy that provides the patients with medications, and disproportionate funds seem to be disappearing into and out of that entity.

- The "premier nursing facility" switches to a new vendor every time one stops providing services due to no-payment, at Dr. Thota's instruction.

- The nursing home operated for significant periods of time without *any* administrator, in violation of Medicare regulations and requirements. To conceal this fact, Dr. Thota apparently continues to use the license of prior administrators in an effort to deceive Medicare into thinking Apollo has an administrator when it, in fact, does not.

- At least one administrator was summarily terminated by Dr. Thota for having the temerity to raise concerns about unpaid bills and patient complaints.

22.    In sum, Dr. Khoury has learned that his investment of $118,000 has gone into a facility where even critical bills (for things as basic as food for the patients) were going chronically unpaid, employees were upset and leaving, and—most significantly for Dr. Khoury, who had himself referred patients to this allegedly "premier" facility—patient care was being neglected.

23.    Dr. Thota's "premier" nursing facility earned such a terrible reputation for itself in the medical community that physicians have stopped referring patients there.

24.    Upon information and belief, derived from conversations with employees and ex-employees of Apollo, Dr. Thota has converted large sums of money belonging to Apollo and to Willowbrook to her own personal use, and has diverted investor funding that should have been used for patient care and the

running of the facility to her own use.  When Dr. Khoury tried to contact the bank which holds his personal guarantee, the bank stated that only Dr. Thota could obtain that information.  This finally elicited a response from Dr. Thota, who had been ignoring Dr. Khoury's repeated attempts to contact her for months: Dr. Thota spoke with Dr. Khoury and demanded that he stop calling the bank, threatening him that if he called again the bank would "default the loan" and leave Dr. Khoury with a catastrophic debt due to his personal guarantee.

### C. Why: Plaintiff Sends Funds to Thota & The Companies

25.    Believing Defendant's promises that he would acquire actual ownership in Apollo and Willowbrook, Plaintiff gave Dr. Thota two checks in October of 2014, one for $50,000 (for Apollo) and one for $68,000 (for Willowbrook).   In January of this year, Dr. Khoury provided an additional $50,000, via check, for the purported "cash call".  Demand for either Willowbrook or Apollo to take action herein would be futile, in that both entities are dominated and controlled by Dr. Thota as their "manager."

### FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

26.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 21 above, and incorporates each by reference as if set forth fully herein.

27.    Plaintiff brings this claim for relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.  Plaintiff seeks a declaration that he in fact has ownership in Apollo and Willowbrook in the amount of 5% and 2%, respectively.

28.    This issue is ripe for the Court's consideration.  Thota promised Dr. Khoury an investment in two LLCs, and has since the day she received his money refused to provide any written proof that his investment exists.  Accordingly, an actual, justiciable controversy exists between the Parties as to whether Plaintiff owns any interest in the Companies, and if so, in what amount.

29.    For the foregoing reasons, the Court should declare that Plaintiff has an ownership interest in the Companies, and in what amount.

## SECOND CLAIM FOR RELIEF

## (Violation of Section 10(b) of the Exchange Act and Rule 10b-5--All Defendants)

30.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 28 above, and incorporates each by reference as if set forth fully herein.

31.    Each of the misrepresentations made by Defendant and detailed above were made in connection with the purported sale to Plaintiff of a security interest

in the Companies.  Defendants, by and through Dr. Thota, made false statements to Plaintiff about the nature of the ownership interest being transferred.

32.     Defendant made each of the above untrue statements of fact, which were all false when made, as set forth above.

33.     Each of the above-stated misrepresentations was material to Plaintiff to induce him to give Defendant $168,000 of his life savings, and he would not have done so in the absence of the above-stated misrepresentations.

34.     Plaintiff reasonably relied upon each of the above-stated misstatements, in that, inter alia, one of the primary purposes of Plaintiff's acquisition of the Shares was to have ownership in, and to exercise control over, the corporate affairs of the Companies—and receiving ownership interest in exchange for an investment is common practice and routinely expected in such transactions.

35.     In light of her refusal to provide any written documentation of the purported sale, Defendant Thota had to know these statements were false when made, or acted with reckless disregard of their truth, all with the intent of defrauding Plaintiff out of $168,000.

36.     Plaintiff has been damaged by Defendants' conduct, and each of them, in an amount to be proven at trial, but in no event less than $168,000.

37.    Plaintiff would not have suffered the loss of his funds and of his anticipated profit on the transaction in the absence of Defendant's misrepresentations, and scheme to defraud him of his money.  The actions of Defendants constituted material misrepresentations, relied upon by Plaintiff to his detriment, without which Plaintiff would never have entrusted Defendant with his funds.

38.    Plaintiff thus: (a)  was falsely induced to purchase securities from Defendants; (b) relied upon the false representations by Defendants;  (c)  suffered a financial loss that was proximately caused by Defendants, and each of them; and (d)  suffered damages as a result of the Defendants' wrongful behavior.

39.    As a result of the wrongful acts herein complained of, Plaintiff suffered damages of no less than $1,000,000, together with other damages subject to proof at trial.

### THIRD CLAIM FOR RELIEF

### (Fraud)

40.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 38 above, and incorporates each by reference as if set forth fully herein.

## FOURTH CLAIM FOR RELIEF

## (INJUNCTIVE RELIEF)

41.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 38 above, and incorporates each by reference as if set forth fully herein.

42.     Plaintiff has no adequate remedy at law.  If Dr. Thota continues administering the Companies as she has done to date, not only is Dr. Khoury's investment in jeopardy—far more important, the health and welfare of Apollo's patients is at risk.  By separate Motion, Plaintiff will request that a receiver be appointed.  Until then, a preliminary injunction is proper.  Preliminary injunctions are warranted where the movant establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest.  (*Plains Cotton Co-op. Ass'n v. Goodpasture Computer Service, Inc.,* 807 F.2d 1256, 1259 (5th Cir.1987) (citing *Enterprise International, Inc.* v. *Corporation Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 471 (5th Cir.1985)).

43.     An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard.  There is no adequate remedy at law if the defendant is

incapable of responding in damages.  (*Dresser-Rand Co.* v. *Virtual Automation Inc.,* 361 F.3d 831, 848 -849 (5th Cir. 2004) (citing *Texas Indus. Gas* v. *Phoenix Metallurgical Corp.,* 828 S.W.2d 529, 533 (Tex.App. - Hous. l992)); *Bank of the Southwest N.A.* v. *Harlingen Nat'l Bank,* 662 S.W.2d 113, 116 (Tex. App. - Corpus Christi 1983, no writ)).  Moreover "insolvency can be a factor in determining whether there is an adequate remedy at law." (*Id.* (quoting *Texas Indus. Gas,* 828 S.W.2d at 533).  Irreparable harm is also established when the failure to grant preliminary relief creates the possibility of a permanent loss of customers to a competitor or the loss of goodwill.  (*See, Multi-Channel TV Cable Co.* v. *Charlottesville Quality Cable Operating Co,* 22 F.3d 546 (4th Cir. 1994)).

44.     As the preceding discussion shows, this application meets the criteria for injunctive relief.  Because Dr. Thota's actions and inactions are damaging both Dr. Khoury and Apollo's patients, and because those actions, if not enjoined will cause both imminent irreparable harm in business, reputation, and health, Plaintiff hereby moves for preliminary mandatory injunctions against Dr. Thota's continued presence at the facility or access to the Companies' bank accounts.

///

///

///

///

-16-

## FIFTH CLAIM FOR RELIEF

## (CONVERSION)

45.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 38 above, and incorporates each by reference as if set forth fully herein.

46.     Thota has made unauthorized transfers of the Companies funds and property, and has converted to her own use funds invested by Plaintiff.  Thota continues to this day to wrongfully exercise such dominion and control over these assets, funds and property, and has refused, and continues to refuse, to turn said assets, funds, and property over to Dr. Thota or the Companies.

## SIXTH CLAIM FOR RELIEF

## (BREACH OF FIDUCIARY DUTY)

47.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 38 above, and incorporate each by reference as if set forth fully herein.

48.     Defendant Thota is, and at all times relevant herein was, the Director of the Companies.  As such, she owed the Companies the highest fiduciary duties, including the duties of loyalty and candor.  Thota breached these duties repeatedly by, *inter alia*, knowingly diverting funds from the Companies to her own benefit, the benefit of her family members, and the benefit of entities she controlled.

-17-

49.     As a result of these breaches, Dr. Khoury has been damaged in an amount to be proven at trial but in no event less than $168,000, and the Companies have been injured in an amount to be proven at trial but in no event less than $1 million.

## SEVENTH CLAIM FOR RELIEF

## (BREACH OF WRITTEN CONTRACTS)

50.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 24 above, and incorporates each by reference as if set forth fully herein.

51.     At all times relevant herein, Thota was signatory to one or more of the written agreements set forth above.  At all times relevant herein, Plaintiff performed, or was excused from performing, all of the terms and conditions set forth in each of the written agreements set forth above.  Thota is and has been in breach of each of the written agreements set forth above to which she is a signatory.  These breaches have included but are not limited to, failing to timely or properly perform the services and duties required of them under the agreements, incompetent performance of services and duties where and when performed, and refusal to provide the things required of them under the terms of the written agreements.

52.     As a direct result of said breaches, Plaintiff has suffered compensatory damages in an amount of no less than $500,000, and consequential damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

## (EXEMPLARY DAMAGES)

53.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 38 above, and incorporates each by reference as if set forth fully herein.

54.     Defendants' actions as set forth above were fraudulent and/or grossly negligent.  Defendants knew or should have known that taking Plaintiff's funds and the Companies' funds would adversely affect Plaintiff and the Companies.  At all times herein, Defendants proceeded with conscious indifference to the rights of Plaintiff and the Companies.

## NINTH CLAIM FOR RELIEF

## (ATTORNEY FEES)

55.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs 1 through 53 above, and incorporate each by reference as if set forth fully herein.

56.     To the extent recovery is had for Defendants' breach of written agreements, or for securities fraud, attorneys fees and costs are recoverable to Plaintiff thereunder.

## TENTH CLAIM FOR RELIEF

## (PRE AND POST JUDGMENT INTEREST)

57.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 55 above, and incorporate each by reference as if set forth fully herein.

58.     Plaintiff seeks pre and post-judgment interest herein.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff respectfully requests that the Court enter judgment:

**As to the First Cause:**

1.     Declaring that Plaintiff is a 5% owner in Apollo.

2.     Declaring that Plaintiff is a 2% owner in Willowbrook.

**As to the Second Cause:**

1.     For the return and restitution of his $168,000;

2.     For monetary damages equivalent to the difference in value between the securities Plaintiff was promised and what he received its fair

market value as of the date hereof, in an amount of no less than $250,000;

3.      For the benefit of the bargain Plaintiff was promised;

4.      For the value of Plaintiff's lost investment returns from the $168,000 he gave Defendants, in an amount to be proven at trial;

**As to the Third Cause:**

1.      For judgment in the amount of $168,000, or such other loss as may be shown at trial, together with interest thereon at the legal rate;

2.      For special damages according to proof, but in no event less than $168,000;

3.      For general damages according to proof, but in no event less than $500,000;

4.      For exemplary damages in an amount to be determined, but in no event less than $750,000;

5.      For imposition of a constructive trust in the amount of $168,000, as against each of the Defendants and all those acting in concert with them or otherwise claiming a beneficial interest in funds belonging to Plaintiff;

6.      For imposition of a resulting trust in the amount of $168,000, as against each of the Defendants and all those acting in concert with

them or otherwise claiming a beneficial interest in funds belonging to

Plaintiff;

**As to the Fourth Cause:**

1.      For an injunction against Dr. Thota's continued presence at the

Companies or access to their bank accounts;

**As to the Fifth Cause:**

1.      For general damages according to proof;

2.      For special damages according to proof, but in no event less than

$168,000;

3.      For punitive damages according to proof, but in no event less than $1

million;

4.      For a constructive trust on all converted assets;

5.      For a resulting trust on all converted assets;

6.      For an order requiring Defendants to turn over to Plaintiff and the

Companies all converted assets.

**As to the Sixth Cause:**

1.      For damages according to proof, but in no event less than $168,000;

2.      For punitive damages according to proof, but in no event less than $1

million.

3.

**As to the Seventh Cause:**

      1.     For compensatory damages according to proof, but in no event less than $168,000;

      2.     For consequential damages according to proof.

**As to the Eighth Cause:**

      1.     For punitive damages according to proof, but in no event less than $1 million.

**As to the Ninth Cause:**

      1.     For attorneys' fees and costs incurred, according to proof.

**As to the Tenth Cause:**

      1.     For prejudgment interest at the legal rate;

      2.     For postjudgment interest at the legal rate.

///

///

///

///

///

///

///

///

**As to all Causes:**

1.  For such other and further relief as the Court deems proper and just.

Respectfully submitted,

WALTON & WALTON, LLP

By: <u>B. Jeff Hamrick</u>
    B. Jeff Hamrick, Esq.
    Texas Bar No. 24046018
      JHamrick@taxtriallawyers.com
    Brian Kandel, Esq. (*Pro Hac Vice*)
    California State Bar No. 180952
      BKandel@taxtriallawyers.com
    L. Richard Walton (*Pro Hac Vice*)
    California State Bar No. 226703
      RWalton@taxtriallawyers.com
    26618 Heatherbriar Lane
    Katy, Texas 77494
    Telephone:  (310) 496-5835
    Facsimile:   (310) 464-3057

**COUNSEL FOR PLAINTIFF, NABIL KHOURY, M.D.**